JUDGE ROBERTSON
delivered the opinion op toe court:
In the year 1852 Philip Triplet, of Daviess county, Ivy., died, leaving three children, Harriet N. Johnson, wife- of the appellee, J. L. Johnson, Laura Triplet, and Philippa Louisa Triplet, and a published will, whereby, after several specific legacies to those daughters, he made the fol-' lowing testamentary provisions: “ All the rest and residue of my estate, not otherwise directed, I devise and. require. to be equally divided among my three above named daughters, for their own use and benefit, and with that herein devised is not to be, in any manner or way, subject to the payment of their husbands’ debts, as my object is to secure my estate to my daughters, for their support and maintenance, which I believe can legally be done without, the intervention of a trustee; but if it cannot, then I appoint my friend, James Weir, trustee for my three daughters, to hold the whole estate devised to them ,in trust for the purposes named in this will.”
“I authorize and request my executors to make conveyance for all lands I have sold and given bonds.for the conveyance of, either in conjunction with W. R. Griffith or his executors or otherwise, when the purchase money is paid; and to sell and convey all my lands, except my plantation, containing about four hundred and thirty acres, and the one hundred and twenty-five acres between A. Stout’s and Mrs. Protsman.”
*166 Laura Triplet died an unmarried infant; and in the year 1862 Philippa L. Triplet intermarried with the appellant, John D. Green, and during the same year died childless.
The executors never having sold any land, but having collected the amount of notes held by the testator for lands sold by him on the Cumberland river, the appellant, in January, 1865, brought this suit in equity for a settlement of the estate, and for one half of the sum collected for lands sold, and of the proceeds of the sale of lands requested to be sold, a decree for compelling the executors to sell, which he prayed as his wife’s administrator.
The answers denied the appellant’s right to either any portion of the money collected for lands sold by the testator, or to a sale of any of the unsold lands; and, on the final hearing, all other matters having been adjusted, the court dismissed the petition, and adjudged the unsold land and the proceeds of the lands sold by the testator, to Mrs. Johnson.
As the proceeds of the sold lands on Cumberland belonged to the appellant’s wife at her death, we can perceive no reason why the appellant, as her administrator, if not in his own righty was not entitled to that fund. And whether he has the like right to require a sale of the lands which the executors were requested by the will to sell, and to demand, as he does, one half of the proceeds, depends on the proper answer to the question— did the will make an equitable conversion of those lands into money? And this is the only question we shall consider. If, instead of devising the title to his three children, and merely requesting a sale of the lands, the testator had devised it to the executors, and peremptorily ordered them to sell, it is admitted that, as to that interest, it was money bequeathed, and not land devised. *167 Nevertheless, if the will concerning the sale must be construed as mandatory, the testator must be presumed to have intended a conversion of the land into money as best for the testamentary beneficiaries. And his intention, if clearly manifest for such conversion, made the land money to the legatees.
A mere authority'to sell could not have been a constructive conversion; but the superadded “request” to sell was constructively mandatory, because the unqualified request was the testator’s will, and left no discretion not to sell. Authority, analogy, and reason allow no escape from this conclusion. Whatever a testator expresses as his will is legatory; and if that will is unqualified, the executors have no right to refuse its fulfillment. Such “request” is synonymous with “require,” or direct, or order. And we see nothing in the context or spirit, or pervading purpose of Triplet’s will, to control that interpretation. His evident design to secure the estate to the use' of his daughters, free from the debts of their husbands, does not imply that he intended to preclude the husbands from any interest during the lives of their wives, or after their deaths; nor does it imply that the testator thought that his aim would be more certainly accomplished by retaining the land than by converting it into money intrusted to the separate use of his daughters, to be secured through James Weir as trustee, if a trustee should be necessary for that purpose. On the contrary, the testator, on deliberate consideration, seemed to think that his provident end of the best interest and security of his daughters would be most advantageously attained by converting certain land into money; and, for that purpose, he requested his executors to make the conversion. This, in equity, was conversion itself, and, therefore, to that extent, the daughters took money instead of land; *168 and when the appellant’s wife died, without electing to keep the land, or being competent so to elect, her interest in that land was not realty but personalty, which went to the appellant as husband or as administrator.
We must, therefore, adjudge to him one half of the proceeds of the sale of the Cumberland land, and also of the sale hereby directed to be made of the lands devised to be sold.
Wherefore, the judgment of the circuit court is reversed, and the cause remanded for proceedings and decree conformable with this opinion.